# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 13 |
| Greg C. and Ka Sandra S. Scott, | Case No. 10-33131 |
| Marcus L. and Jacquelyn L. White, | Case No. 10-33300 |
| James F. and Laurie L. Shewmake, | Case No. 10-32582 |
| Debtors. | |

## OPINION

This matter comes before the Court on the Chapter 13 Trustee's objections to confirmation of plans offered by debtors Greg and Ka Sandra Scott and Marcus and Jacquelyn White and the objection to confirmation of the amended plan offered by debtors James and Laurie Shewmake (collectively "the debtors"). The basis of the Trustee's objections, which is common to all three cases, is 11 U.S.C. § 1325(b). The Trustee objects that the debtors are not paying all of their projected disposable income to unsecured creditors under the proposed plans. For the reasons that follow, the Trustee's objections are overruled.

## Facts

The relevant facts of all three cases are not in dispute. Each of the debtors filed for relief under Chapter 13. As part of their petitions, they completed the requisite Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C). Form B22C, commonly known as the "means test," is a standardized form which is used to determine the amount of disposable income that a debtor is able to pay to unsecured creditors.

1

Because each debtor reported annualized income on their Form B22C that is above the applicable median income for their respective household size, they were required to calculate their disposable income pursuant to 11 U.S.C. § 1325(b)(3). As such, the debtors were directed by the form to take the Internal Revenue Service standardized deductions ("I.R.S. Standard") for certain expenses. Specifically, at Lines 28a and 29a the debtors claimed standardized "transportation ownership/lease expense[s]" of $496 for each of two cars, despite the fact that their actual ownership expenses are less than this amount. The debtors then deducted the amounts of their actual monthly car payments on lines 28b and 29b to arrive at their net car ownership expenses.[1]

After calculating their car ownership expenses, the debtors continued to line 47 of Form B22C, which is where above-median income debtors are asked to list their future payments on secured claims or "debt payments." Each of the debtors listed their average monthly loan

---

[1] In order to more clearly illustrate the Form and its instructions, the Court has reproduced a copy of lines 28 and 29 from debtors Greg and Ka Sandra Scott's Form B22C below. Debtors claimed the I.R.S. Standard of $496.00 on lines 28a and 29a, then deducted their monthly car payments on Lines 28b and 29b to arrive at their net ownership expenses for each vehicle.

| | | | | |
|---|---|---|---|---|
| 28 | Local Standards: transportation ownership/lease expense; Vehicle 1. Check the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.) ☐ 1  ■ 2 or more. <br> Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 1, as stated in Line 47; subtract Line b from Line a and enter the result in Line 28. **Do not enter an amount less than zero.** | | | |
| | a. | IRS Transportation Standards, Ownership Costs | $ 496.00 | |
| | b. | Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 47 | $ 223.20 | |
| | c. | Net ownership/lease expense for Vehicle 1 | Subtract Line b from Line a. | $ 272.80 |
| 29 | Local Standards: transportation ownership/lease expense; Vehicle 2. Complete this Line only if you checked the "2 or more" Box in Line 28. <br> Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 2, as stated in Line 47; subtract Line b from Line a and enter the result in Line 29. **Do not enter an amount less than zero.** | | | |
| | a. | IRS Transportation Standards, Ownership Costs | $ 496.00 | |
| | b. | Average Monthly Payment for any debts secured by Vehicle 2, as stated in Line 47 | $ 248.27 | |
| | c. | Net ownership/lease expense for Vehicle 2 | Subtract Line b from Line a. | $ 247.73 |

payments for their two cars.  The effect of listing their monthly payments here is to enable the debtors to receive the full value of the I.R.S. Standard. The Trustee objects, arguing that by claiming a transportation expense in excess of what they actually owe, the debtors are not paying all of their disposable income into the plan for the benefit of their unsecured creditors in violation of 11 U.S.C. § 1325(b).   He contends that they should be allowed to deduct only their actual monthly payment, since it is less than the I.R.S. Standard.

## Issue

Can a debtor whose secured debt payment on a car is less than the I.R.S. Standard receive the benefit of the full deduction?

## Discussion

The "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'"  *Ransom v. FIA Card Services*, 131 S. Ct. 716, 723-24 (2011) (*quoting United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).  Section 1325(b)(1)(B) of the Bankruptcy Code states:

> If the Trustee. . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan. . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the fI.R.S.t payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), "projected disposable income" was determined by examining a debtor's Schedules I and J, which reflected the debtor's actual income and expenses, respectively.  Since BAPCPA, "disposable income" is defined through a statutory formula.  Section 1325(b) continues:

3

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor. . . .

This formula is embodied in Form B22C's means test. The means test "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which lead to varying and often inconsistent determinations." *Ransom*, 131 S.Ct. at 722.

For debtors who report income that is above the median for their state, as is the case here, "amounts reasonably necessary to be expended . . . shall be determined in accordance with paragraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3)(B). Section 707(b)(2)(A)(ii)(I) states in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I). The above-referenced National and Local Standards are set forth at lines 24A through 29 on Form B22C. The local standard for a "transportation ownership/lease expense" is found at lines 28 (vehicle 1) and 29 (vehicle 2). The I.R.S. Standard for such an expense in this district is $496.00 per vehicle.

The debtors maintain that they are entitled to claim the entire I.R.S. Standard for each of their two vehicles based on a plain language interpretation of § 707(b)(2)(A)(ii)(I). Specifically, the debtors focus on the portion of the statute that provides that "the debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts *specified under the National and*

4

*Local Standards . . . .*" 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).  As car payments are listed under the local standards on Form B22C and not as an "Other Necessary Expense[]" (which, under the statute, is limited to a debtor's *actual* monthly expense), debtors argue that they are entitled to claim the specified standard amount, despite the fact that their actual monthly vehicle payment is less.  Under the debtors' interpretation, there is no room for equivocation concerning expenses:  they *shall be* the national and local standards on certain 'applicable' expenses.

In addition to the statutory text, debtors also rely, in part, on this Court's opinion in *In re Barrett*, 371 B.R. 855 (Bankr. S.D. Ill. 2007).  In *Barrett*, the debtor owned two vehicles—one which was subject to a lien and on which the debtor made a monthly car payment and the other which was owned outright.  On her Form B22C the debtor claimed the I.R.S. Standard for both vehicles.  In permitting both deductions, the Court stated that "§ 707(b)(2)(A)(ii)(I) of the Bankruptcy Code authorizes [a] debtor to use the I.R.S. standard expense deductions even if [his] actual expenses are less." *Id*. at 857.   Specifically, the Court focused on what it believed to be the plain language of the statute.  However, *Barrett* was decided prior to the Supreme Court's ruling in *In re Ransom*.[2]  Furthermore, its discussion was limited to the fI.R.S.t sentence of § 707(b)(2)(A)(ii)(I).  The creditor in *Barrett* did not raise, nor did the Court address, the sentence that reads, "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts" (the "notwithstanding sentence.").  At fI.R.S.t blush, this sentence appears to prevent the debtors from taking *any* deduction for a secured

---

[2] *Ransom v FIA Card Services, N.A..*, decided by the Supreme Court on January 11, 2011, effectively reversed the portion of *Barrett* which permitted a debtor to claim a standard expense deduction, even in the absence of an actual vehicle payment.  In *Ransom,* the Court held that a debtor must actually have a vehicle payment/ debt in order to claim the standard transportation ownership expense on Form B22C.  However, the *Ransom* Court did not address the other issue in *Barrett*—whether a debtor with a lesser vehicle payment may still claim the entire standard expense deduction.

5

vehicle payment, let alone allowing a full standard deduction. As will be discussed below, the Court believes that this sentence does not quite say what it appears to say on its face, but the language is strong enough to color the statute opaque.

The crux of the Trustee's argument is the aforementioned "notwithstanding sentence." He argues that there is a distinction between "debt payments" (which would include such things as car payments, mortgage payments, student loans, and domestic support obligations) and general monthly expenses, such as utilities, food, clothing, water, and life insurance, to name a few. The Trustee urges the Court to read the "notwithstanding sentence" as disallowing standard expense deductions for anything that could be considered a debt payment by his definition.

The Court disagrees with the Trustee's interpretation. Form B22C was created by the Judicial Conference of the United States in October 2005, after passage of BAPCPA.[3] *See* e.g. *In re Guzman*, 345 B.R. 640, 643 (Bankr. E.D. Wis. 2006). It was drafted by the Conference to assist practitioners in calculating disposable income. The Court views this as an advisory opinion as to how § 707(b)(2)(A)(ii)(I) should be interpreted. In this regard, lines 28 and 29 of the form *specifically* direct the debtor to subtract their actual monthly car payment from the I.R.S. Standard, presumably because these payments aren't expenses—they're debts. The debtor then adds his monthly vehicle payment back into the calculation at line 47, where they are told to

---

[3] The Judicial Conference of the United States is the principal policy making body concerning the administration of the United States Courts. It is comprised of the Chief Justice of the United States, the chief judge of each judicial circuit, the Chief Judge of the Court of International Trade, and a district judge from each regional judicial circuit. The Conference operates through a number of committees created to advise on a wide range of subjects, including rules of practice and procedure. The committee members are appointed by the Chief Justice. http://www.uscourts.gov/Federal Courts/Judicial Conference.aspx. The Conference derives its authority from 28 U.S.C. § 331. Pursuant to Federal Rule of Bankruptcy Procedure 9009, "the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. . . . The forms shall be construed to be consistent with [the Rules of Bankruptcy Procedure] and the Code." Fed. R. Bankr. P. 9009.

include debt payments. Intricate as it may be, the approach of the Judicial Conference on Form B22C gives effect to the entire statute.

Further, under the Trustee's interpretation of § 707(b)(2)(A)(ii)(I), Part IV of Form B22C is rendered meaningless. In both the brief submitted to the Court and at oral argument, the Trustee was not able to point to any authority that supports his position. In fact, the Trustee admitted that lines 28 and 29 of Form B22C would never be used by a debtor under any circumstance if the Court read the section as he urges. The Trustee suggested that Form B22C is incorrectly designed when it offers a debtor the opportunity to deduct vehicle ownership/lease expenses.

The Court finds the Trustee's reading unlikely. Congress provided a method for calculating average monthly payments on secured and priority debts in § 707(b)(2)(A)(iii) and (iv), respectively. The Court "'must give effect to every word of a statute whenever possible.'" *Ransom*, 131 S. Ct. at 724 (*quoting Lecocal v. Ashcroft*, 543 U.S. 1, 12 (2004)). Because § 707(b)(2)(A)(iii) specifically addresses how secured debt payments are to be calculated, the Court cannot, in interpreting § 707(b)(2)(A)(ii)(I), simply read them out of the statute. Instead, § 707(b) must be interpreted in such a way as to harmonize all of its various subparts. Form B22C, as prescribed, does this. By directing debtors to subtract their monthly vehicle loan payment from the I.R.S. Standard at lines 28(b) and 29(b), the form ensures that the "monthly expenses of the debtor[s] [do] not include any payments for debts." Permitting debtors to then include these loan payments at line 47, which mirrors the language of § 707(b)(2)(A)(iii), gives effect to all sections of the statute.[4]

---

[4] The Trustee argues that under his interpretation of § 707(b)(2)(A)(ii)(I), a debtor is not without remedy to deduct car ownership expenses. He suggests that a debtor may deduct his actual car ownership expense as an "Other

The Trustee's second and third arguments are based on his interpretation of *Ransom v. FIA Card Services*, 131 S. Ct. 716, 723-24 (2011). In *Ransom*, the Supreme Court was asked to decide whether a debtor may claim the I.R.S. Standard on Form B22C, even if they own their vehicle outright and make no loan payment on it. In concluding that debtors may not claim the I.R.S. Standard in such circumstances, the Court reasoned that this expense was not "applicable" to the debtor under § 707(b)(2)(A)(ii)(I). According to the Court, "[a]n expense amount is 'applicable' within the plain meaning of [§ 707] when it is appropriate, relevant, suitable, or fit." *Ransom* at 724. It went on to explain:

> What makes an expense amount 'applicable' in this sense (appropriate, relevant, suitable, or fit) is most naturally understood to be its correspondence to an individual debtor's financial circumstances. Rather than authorizing all debtors to take deductions in all listed categories, Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if but only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan.

*Id.* The Trustee asserts that the debtors' interpretation of "applicable monthly expense amounts" in § 707(b)(2)(A)(ii)(I) is inconsistent with the Court's interpretation of the phrase in *Ransom.* The Trustee believes that the debtors' actual average monthly payment is more "appropriate, relevant, suitable or fit" than taking the I.R.S. Standard when the actual payment is less than the Standard. This Court disagrees.

In light of the *Ransom* decision, which only authorizes a debtor to claim a vehicle ownership expense deduction if they have a vehicle payment, it seems ridiculous that the Court

---

Necessary Expense." The Court is not persuaded by the Trustee's delineation between national and local standard-qualifying expenses and "other necessary expenses." Nothing in the statute suggest that the "notwithstanding" sentence applies only to the standards and not to "other necessary expenses"

8

even undertook to decide what is "applicable" if that section is not even relevant. The Court did not "throw out" lines 28 and 29, as the Trustee suggests that we do.

Admittedly, the *Ransom* Court explicitly declined to address the issue now before this court.[5] However, the above-referenced language suggests that taking the I.R.S Standard is appropriate where the debtor "has costs corresponding to the category covered by the [National or Local Standard] table." It is undisputed that each of the debtors in the cases at bar have monthly transportation ownership costs in the form of car loans. Therefore, this Court finds that the I.R.S. Standard is "applicable" and may be claimed in full by the debtors, despite the fact that their actual vehicle loan expenses are less.

Further, this Court believes that allowing the debtors to take the full I.R.S. Standard likewise gives meaning and distinction to the different categories of expenses in § 707(b)(2)(A)(ii)(I). Once the debtors can show that they have a secured car ownership expense, they are entitled to claim the I.R.S Standard because that is the "applicable" expense. Had Congress intended to limit the car ownership expense to actual cost, it could have said so. Justice Scalia makes this point in his *Ransom* dissent:

> Elsewhere as well, the Code makes it very clear when prescribed deductions are limited to actual expenditures. Section 707(b)(2)(A)(ii)(I) itself authorizes deductions for a host of expenses-health and disability insurance, for example-- only to the extent that they are "actual. . . expenses" that are "reasonably necessary." Additional deductions for energy are allowed, but again only if they are "actual expenses" that are "reasonable and necessary." § 707(b)(2)(A)(ii)(V). Given the clarity of those limitations to actual outlays, it seems strange for Congress to limit the car-ownership deduction to the somewhat peculiar category

---

[5] "The parties and the Solicitor General as *amicus curiae* dispute the proper deduction for a debtor who has expenses that are *lower* than the amounts listed in the Local Standards. . . . We decline to resolve this issue." *Ransom* at 727 n. 8. It should be noted that the Court *did*, however, state that a debtor whose actual expenses exceed the I.R.S. Standards would be limited to the Standard amount: "[i]f a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures." *Ransom* at 727.

9

> "cars subject to any amount whatever of outstanding indebtedness" by the mere word "applicable . . . .

*Id*. at 732.  Under the express language of § 707(b)(2)(A)(ii)(I), only "the categories specified as Other Necessary Expenses" are to use actual expenses. There is no provision in § 707(b)(2)(A)(ii)(I) for "reducing the specified amounts to the debtor's actual expenses. . . ." *In re Barrett*, 371 B.R. 855, 858 (Bankr. S.D. Ill. 2007).  Congress did not tell us to use actual expenses for the categories subject to the national and local standards, although it clearly knew how, had it chosen to do so.

The Trustee's other *Ransom* argument is that the debtors' approach frustrates BAPCPA's "overall purpose of ensuring that the debtors repay creditors to the extent that they can." *Ransom* at 727.  As the Court noted in *Ransom,* "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum that they can afford'."  Adopting the Trustee's position in the cases at bar would provide a greater return to unsecured creditors, as in each case, the debtors' disposable income would be increased by more than $100.00 per month.  He argues that the I.R.S. Standard is not "reasonably necessary" as the term is used in § 1325(b)(2) when the actual expense is less because that would not maximize the return to unsecured creditors.

Certainly, maximizing repayment to creditors was a primary goal in enacting BAPCPA. However, this Court believes that Congress intended to advance other policy objectives through BAPCPA as well.  One such objective was the removal of judicial discretion in determining disposable income.  As this Court previously stated in *In re Nance*:

> [F]ocusing on repayment to creditors as Congress' ultimate goal . . . ignore[s] other potential competing goals of Congress under BAPCPA, particularly the desire to eliminate judicial discretion.  It is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and

10

>   the calculation methods for determining 'projected disposable income' that a
>   major goal of Congress was to replace judicial discretion with specific statutory
>   standards and formulas.

371 B.R. 358, 366 (Bankr. S.D. Ill. 2007). *See also In re Rudler*, 388 B.R. 433, 439 (1st Cir. BAP 2008) ("Congress' intent in adding the means test was to create a more objective standard for establishing a presumption of abuse and to reduce judicial discretion in the process."); *Musselman v. Ecast Settlement Corp.*, 394 B.R. 801, 812 (E.D.N.C. 2008) ("in enacting BAPCPA, Congress had more than one policy goal in mind.  Beyond ensuring greater payouts by Chapter 13 debtors to their creditors, Congress, in its amendments to § 1325(b) also sought to impose objective standards on Chapter 13 determination, thereby removing a degree of judicial flexibility in bankruptcy proceedings."); *In re Cutler*, 2009 WL 2044378 (Bankr. S.D. Ind. 2008) ("repayment to creditors may have been one of the goals behind BAPCPA, but Congress' intent in creating the means test under § 707(b)(2) was to eliminate judicial discretion and replace it with a mathematical formula to determine abuse in Chapter 7 cases.").  Permitting debtors to take the I.R.S. Standard furthers this goal by reducing judicial involvement.

   This Court recognizes that, by using a standardized approach to determining disposable income, anomalous results may occur.  The Supreme Court recognized this possibility, too. "Such formulas are by their nature over-and under-inclusive.  In eliminating the pre-BAPCPA case-by case adjudication of above-median income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Ransom*, 131 S.Ct. at 729.  The approach adopted by this Court still advances the goal of maximizing the return to creditors—it simply does so *within the framework prescribed by Congress and Form B22C*. The Bankruptcy Code and Form B22C tell us how maximum return

11

to creditors is to be calculated. Although the Trustee is correct in pointing out that using actual expenses when they are less than the I.R.S. Standard will yield more disposable income, this is not the framework we have been given. The framework tells us to measure the maximum return by using the applicable I.R.S. Standard—not actual.

As his final argument, the Trustee directs the Court to the Supreme Court's decision in *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010). He argues that *Lanning* gives this Court discretion to take into account a known difference between the debtors' actual expense and the I.R.S. Standard taken on Form B22C when calculating disposable income. The Trustee's reliance on *Lanning* is misplaced.

The debate before the Court in *Lanning* was whether projected disposable income should always be a strict calculation based on the debtor's current monthly income and expenses during the six month period prior to filing (the "mechanical" approach) or whether a court could take into account some variable(s) that paint a different picture than the mechanical approach would show (the "forward-looking" approach).[6] In adopting the forward-looking approach, the Court stated that lower courts "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In so holding, the Court noted that even under the "forward looking" approach, a Court "should begin by calculating disposable income and in most cases nothing more is required. It is only in the *unusual* cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.* at 2475 (emphasis added).

---

[6] In *Lanning*, the debtor received a one-time buyout from her employer in the six-month period prior to filing bankruptcy. This payment greatly increased her gross disposable income during that period and did not accurately reflect the debtor's actual income.

12

Unfortunately for the Trustee, the *Lanning* decision affords latitude to the Court only when there has been a *change* in the debtor's financial situation. Where there is no change, *Lanning* has no bearing. Here, the Trustee has not presented any evidence of *changes* in the debtors' financial situations such that they would warrant a departure from the mechanical approach, nor has he shown that the circumstances presented in these cases are unusual in any way. Therefore, the Court finds no reason to depart from the method of calculating disposable income that is set forth in the Code and on Form B22C.

### **Conclusion**

The Court believes that a reading of § 707(b)(2)(A)(ii)(I) that allows the debtors to deduct the entire I.R.S. Standard, even though their actual car payment may be less, is the interpretation most consistent with the language of the statute. Adopting the Trustee's approach would essentially bring this Court back to the pre-BAPCPA practice of evaluating disposable income based on the debtors' Schedules I and J, a practice that was eliminated by Congress with the enactment of BAPCPA and creation of Form B22C.

Accordingly, for the reasons set forth above, the Trustee's objections concerning the debtors' deduction of the I.R.S. Standard transportation expense are overruled. Any of the Trustee's other objections in these cases remain pending.

SEE ORDER ENTERED THIS DATE.

ENTERED: August 9, 2011

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE